**STATE of Missouri, Plaintiff-Defendant,**

v.

**Mark MOLASKY, Defendant-Appellant.**

No. 45850.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 14, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1983.

Application to Transfer Denied
Sept. 20, 1983.

Arthur S. Margulis, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., John M. Morris, Jefferson City, for plaintiff-defendant.

SNYDER, Presiding Judge.

A jury found appellant guilty of rape, § 566.030 RSMo. 1978,[1] three counts of sodomy, § 566.060, and abuse of a child, § 568.060. Appellant was convicted and sentenced to a total of 32 years imprisonment.[2] The judgment is affirmed.

Appellant raises five points on appeal. He asserts that the trial court erred in: 1) Denying his motion for a change of venue and his motion to strike the jury panel and the jury; 2) admitting into evidence state's exhibit # 1, a video tape recording; 3) overruling appellant's objections to the introduction of his alleged statements because appellant himself was not present at the hearing on a motion to suppress; 4) failing to grant a new trial because the prosecutor used the term "Nazi" in his closing argument; and 5) submitting a verdict director which did not permit the jury to consider a verdict of not guilty when in fact he had not abandoned this defense.

Appellant first contends that the trial court abused its discretion in denying his motion for a change of venue. The point is denied.

The granting or denial of a change of venue "rests within the trial court's discretion, and that ruling is not to be disturbed unless an abuse of discretion is dem-

---

1. All statutory references are to the Revised Statutes of Missouri, 1978 unless otherwise specified.

2. The court sentenced appellant as follows: Rape—12 years, sodomy—10 years on each count, abuse of a child—5 years. Two of the sodomy counts were to run consecutively with the rape count punishment. One sodomy count and the abuse of a child count were to run concurrently with the other sentences.

onstrated." *State v. Boggs,* 634 S.W.2d 447, 457[14] (Mo. banc 1982). In order to find an abuse of discretion, it is necessary to conclude that the record permits no interpretation other than that "the minds of the inhabitants of the county . . . are so prejudiced against the defendant that a fair trial cannot be had therein." § 545.430; see also Rule 32.04(a).

Appellant in effect merges two claims of error in this point. First, he is complaining about the trial court's failure to grant his motion for a change of venue prior to trial and second, its failure to grant his motion to strike the jury panel and the jury during the trial. Both the appellant and the state direct most of their argument to attempting to prove either prejudice or nonprejudice on the part of the veniremen, although appellant relates in detail the items of publicity received by the case in the broadcast and printed media.

After appellant's motion for a change of venue was filed,[3] a hearing was held on January 6, 1982. Defendant's evidence consisted of the testimony of one witness and the introduction of eleven motion exhibits. The state offered no evidence. The appellant's motion for change of venue was denied by the trial court on January 8, 1982.

Appellant's evidence at the motion hearing disclosed that one metropolitan newspaper, the St. Louis Post Dispatch, had published 40 articles concerning the defendant's case during the period beginning approximately six months prior to the date of the hearing. Forty-four articles appeared in the daily St. Louis Globe Democrat. Some of the articles related to other charges then pending or brought against the appellant.

Nineteen of the articles in the St. Louis Post Dispatch commented upon the video tape which was introduced in evidence at the trial. The articles said the video tape was made by the appellant and depicted a woman who later became his wife and his

child engaging in sexual relations. However, the headlines of twenty-nine of the Post Dispatch articles related only to appellant's efforts to make bond or the property offered as security, although seventeen of these articles mentioned also the video tape of the sexual relations.

Comments of a prosecutor about the appellant and the case were published in the St. Louis Globe Democrat articles, comments better left unsaid. There was also evidence of an item in a gossip column about a traffic violation charge brought against one of appellant's attorneys[4] in a St. Louis county municipality. Headlines of thirty of the Globe Democrat articles related only to appellant's efforts to make bond, although some of these articles mentioned also the video tape and other aspects of the case.

This court cannot say that the trial court abused its discretion. In a metropolitan area the size of St. Louis, many crimes are reported, some of which are particularly violent or revolting. The case under review was one of them. The trial judge is in a better position to assess the effect of the publicity on the minds of the inhabitants of the county and to determine whether the people who reside in the county are so prejudiced against a defendant that a fair trial would be impossible. This court will not substitute its judgment for that of the trial judge.

The absence of prejudice was further borne out by the voir dire of the jury panel during the trial. Among a panel of thirty potential jurors, only three had formed an opinion (they were promptly stricken from the panel and replaced by alternate veniremen who had not formed an opinion). Eight had never seen or heard any publicity about the case or appellant. Twelve others testified that they remembered little or nothing of what they had heard or seen.

---

**3.** Appellant filed his motion for a change of venue on December 10, 1981. Rule 32 governing change of venue (adopted June 13, 1979) had been suspended effective November 21, 1979 until further notice. No rule was in effect on December 10, 1981. Rule 32.04 was adopted April 20, 1981, effective January 1, 1982.

**4.** The attorney was not appellant's present attorney on appeal.

Each of the potential jurors who had heard anything at all about the case was extensively questioned about his ability to afford appellant the presumption of innocence and to fairly judge the case, and each stated unequivocally that he could serve as a fair and impartial juror.

■ Even if a prospective juror has formed an opinion on an issue, if that "opinion is founded only on rumor and newspaper reports, and not such as to prejudice or bias the mind of the juror, he may be sworn." § 546.150. Exposure to publicity is not deemed inherently prejudicial and a juror may be sworn if he is able to set aside any opinion formed from the publicity when he enters the jury box. *State v. Richards,* 536 S.W.2d 779, 786[5] (Mo.App.1976); see also, *United States v. Poludniak,* 657 F.2d 948, 955 (8th Cir.1981) cert. den. 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982) which approves the same rule for the federal courts.

■ The trial court is in a far better position to measure and evaluate a venireman's demeanor. *State v. Royal,* 610 S.W.2d 946, 950[6, 7] (Mo. banc 1981). It was within the legitimate province of the trial court to conclude that the jurors were not prejudiced against appellant as a result of whatever publicity they had seen. It follows that there was no error in denying appellant's motion to strike the jury panel and the jury.

Appellant relies on the volume of the publicity and also the nature of the information disseminated. He distinguishes the present case from *State v. Parcel,* 546 S.W.2d 571 (Mo.App.1977) in which the trial court's denial of a motion for a change of venue was upheld, by emphasizing that in *Parcel* the Southern District of the Court of Appeals pointed out that the media reported no statements of the authorities relevant to the guilt or innocence of the defendants or statements concerning the evidence. *State v. Parcel, supra* at 574.

In the case under review, comments on the evidence were published as well as comments about other charges against appellant. The complained of comments should not have been made by the prosecuting officials but considering the period of time over which the publicity was issued, the fact that St. Louis is a metropolitan area in which a large volume of publicity about crime is constantly before the public, and the absence of prejudice as shown by the voir dire examination, this court cannot say that the trial court abused its discretion in denying the motions.

Appellant relies also on a dissenting opinion in *United States v. Poludniak, supra,* in which a member of the court questioned the efficacy of the voir dire examination in undercovering prejudice among potential jurors. However, in *Poludniak* the denial of a change of venue was upheld by the federal court of appeals as was the adequacy of the voir dire examination which appellant challenged. Appellant fails to cite, and research has not disclosed, any Missouri case in which the appellate court has reversed a trial court because it abused its discretion in denying an application for a change of venue.

In his second point the appellant charges the trial court erred in admitting into evidence State's Exhibit # 1, a video tape. He argues that no foundation had been established, that the exhibit was testimonial in nature and constituted a privileged communication between husband and wife, and that the exhibit contained statements by a co-defendant who was not present at the trial, thereby depriving appellant of his constitutional rights of confrontation and cross-examination guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, § 18(a) of the Missouri Constitution. This point is ruled against appellant.

■ During the course of the trial appellant admitted the authenticity of the video tape. His expert medical witnesses relied upon the exhibit when they testified that appellant was not responsible for his actions. Appellant's counsel admitted to the jury that the defense did not deny the video tape or the acts it depicted. Therefore, appellant cannot now argue successfully

that admission of the video tape was prejudicial error.

A challenge to a sound recording of out of court statements by the defendant was denied in *State v. Brown,* 607 S.W.2d 881 (Mo.App.1980) in which the courts said "The defendant's point is disposed of by his admission that it was his voice on the recording played to the jury." *Id.* at 885[4]. See also, *State v. Ryder,* 598 S.W.2d 526, 527[4] (Mo.App.1980); *State v. Vandiver,* 592 S.W.2d 304, 306–307[5] (Mo.App.1979); and *State v. Quinn,* 565 S.W.2d 665, 673 (Mo. App.1978) in which defense admissions obviated claims of reversible error.

■ Video tapes are admissible as evidence in Missouri upon the laying of a proper foundation. See *State v. Lindsey,* 507 S.W.2d 1, 3 (Mo. banc 1974); *State v. Lusk,* 452 S.W.2d 219, 224 (Mo.1970).

> 'If after a preliminary examination, the trial judge is satisfied that the sound moving picture reproduces accurately that which has been said and done, and the other requirements relative to the admissibility of a confession are present, i.e., it was freely and voluntarily made without hope of immunity or promise of reward, then . . . the sound moving picture [should] go to the jury.'
> (citations omitted). *Id.* at 224.

*Cf. State v. Spica,* 389 S.W.2d 35, 44 (Mo.1965), *cert. denied* 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966), cited by appellant, which discussed in dicta standards applied by other jurisdictions to the admission of sound recordings.

The appellant identified the tape and said that it had been made in the bedroom of his home and then attempted to explain away the tape by saying that he had come home to find his future wife committing sex acts with his son before the camera, and when he objected his voice got on the tape. He asserted his wife was blackmailing him with the tape and that he wanted to use the tape against her in divorce proceedings.

The tape was verified by a video tape expert who said it was an original video tape produced on a common home video cassette recorder. The expert said that the tape was not edited in any way and that it could not be undetectably altered by any known editing method.

The trial court could reasonably have concluded that the video tape at issue was a reliable reproduction of the events depicted. The second element of the *Lusk* standard requiring that the statements be voluntary is not pertinent because appellant voluntarily made the tape for his own use in the privacy of his home.

Appellant's theory that the video tape was not admissible because it disclosed confidential communications between husband and wife can be disposed of by pointing out that at the time the video tape was made, appellant and his co-participant were not married. There was no relation of husband and wife which would elevate the statements made on the video tape to the status of "confidential communications."

■ Karen Molasky did not testify as a witness in this case, and therefore § 546.260 relating to testimony of husbands or wives in criminal causes of action is not applicable.

The holding of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), relied on by appellant, is not applicable to the facts here. *Bruton* held that where two defendants are jointly tried, the confession of one defendant is not admissible unless the confessing defendant took the stand. *Id.* 391 U.S. at 137, 88 S.Ct. at 1628. Karen Molasky was not a defendant in the case under review. Therefore, the holding in *Bruton* does not apply. *Elliott v. Thompson,* 599 F.2d 767 (6th Cir.1979) *cert. den.* 444 U.S. 932, 100 S.Ct. 278, 62 L.Ed.2d 190 (1979), also cited by appellant, merely enforces the rule in *Bruton.*

■ There was no violation of appellant's constitutional right to confrontation. The comments of Karen Molasky on the tape were not offered for the truth of the matters asserted, but to supply the context for admissions made by appellant on the video tape; it was otherwise irrelevant that Kar-

en Molasky thought the acts in which she was engaged were "terrible" or "sick." The evidence was therefore admissible. See *State v. Harris,* 620 S.W.2d 349, 355[13, 14] (Mo. banc 1981). Appellant's right to confrontation was not implicated simply because the credibility of Karen Molasky was not at stake in the trial.

■ Even if the statements were hearsay, they fall within two exceptions to the hearsay rule. Statements made during the course of the very criminal transaction for which a defendant is on trial constitute part of the res gestae. See *State v. Talbert,* 454 S.W.2d 1, 3[2–4] (Mo.1970). Karen Molasky's comments were thus part of the res gestae. Furthermore, there is evidence that Karen Molasky and appellant were co-conspirators in the sexual abuse of appellant's son; therefore, Karen Molasky's statements were admissible as statements of a co-conspirator. See *State v. Deyo,* 387 S.W.2d 561, 562[1] (Mo.1965).

■ Although it has been held that the confrontation clause restricts the range of admissible hearsay by requiring unavailability of the declarant and reliability of the hearsay, *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980), the requirement of unavailability need not be met where the utility of trial confrontation is remote. 448 U.S. at 65 fn. 7, 100 S.Ct. at 2538 fn. 7. Here, the high degree of reliability as indicated by the video tape itself and the fact the statements, even if hearsay, fall within two exceptions to the rule, render the usefulness of any cross-examination extremely doubtful. Thus, even assuming *arguendo* that the statements were hearsay, appellant's right to confront witnesses was not abridged.

■ Appellant's next point relied on charges trial court error in overruling appellant's objection to the introduction into evidence of alleged statements of defendant because defendant was not present at the motion to suppress hearing and therefore was deprived of his rights guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 10 and 18(A) of the Missouri Constitution. The point is denied.

When a hearing was held on the motion to suppress statements appellant had made to law enforcement officials during apprehension and custody, appellant was not present. The attorney who then represented appellant said at the hearing, "For the purpose of these motions to suppress and alternative motions in limine the defendant's presence at these proceedings is waived." After appellant employed a new attorney, the new attorney filed a motion for rehearing of the suppression motions which was denied. A copy of the motion for rehearing was not included as a part of the record on appeal, but appellant says that appellant's absence at the hearing was one of the issues raised in that motion.

During the trial appellant's counsel raised objections to the introduction of statements by appellant on the basis of his absence at the hearing on the motion to suppress. No evidence was offered that appellant's absence from the suppression hearing was anything but voluntary either during or after the trial. It was up to appellant to prove that his absence at the suppression hearing was not voluntary, even assuming he had a right to be present at the hearing. See *State v. Cheeks,* 604 S.W.2d 30, 32[3, 4] (Mo.App.1980).

Whether a defendant has a right to be present at a hearing on a motion to suppress was given extensive consideration in *State v. Sanders,* 539 S.W.2d 458 (Mo.App. 1976). The court in *Sanders* held that the defendant had no statutory or constitutional right to appear personally at a suppression hearing where the defense counsel waived his appearance. *Id.* at 461[2–5].

Appellant attempts to distinguish *State v. Sanders, supra* by arguing that the defendant in *Sanders* was absent only for the part of the hearing when no testimony was taken, whereas here there was testimony in appellant's absence. The distinction is without a difference. This court in *Sanders* did not give any indication that the fact that no testimony was adduced in the defendant's absence was important. Rather, this court reasoned, and still reasons, that the filing of a motion to suppress evidence is a matter within the defense counsel's

discretion in pretrial strategy and whether the defendant should or should not be present during the hearing on the motion is part of that same pretrial strategy. *State v. Sanders, supra.*

■ Appellant next alleges that plain error occurred when the assistant prosecuting attorney used the term "Nazi" in closing argument because use of the term under the circumstances created bias and prejudice, was highly inflammatory and called the attention of the jury to the defendant's ethnic background. Appellant maintains that the reference to "Nazi" in the argument deprived him of his rights of due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, § 10 of the Missouri Constitution. This point also has no merit.

The prosecutor said, "Well, I don't think I am a horrible person, or any kind of Nazi for asking you to consider 65 years." No objection was made. The appellant is a member of the Jewish faith, but this fact was not in evidence.

This point is reviewable only for manifest injustice under Rule 29.12(b). "Ordinarily, alleged errors on closing argument do not justify relief under this standard unless they are determined to have a decisive affect on the jury." *State v. Murphy,* 592 S.W.2d 727, 732[9] (Mo. banc 1979).

The prosecutor asked for the imposition of the maximum penalty on all counts, a total of 65 years imprisonment, in the initial portion of his argument. Appellant's counsel, during his submission, attacked the recommendation saying that "The amount of years that the prosecuting attorney is asking you to send him away for, I believe shocks a person's conscience," and that "any amount the prosecutor is talking about and hoping to get from you is so far out of line with reality—based on these charges. That's unconscionable."

The prosecutor then replied to these charges during rebuttal:

"Well, I don't think I'm a horrible person, or any kind of a Nazi for asking you

to consider 65 years. I'd like to talk to you about that for a little while. I have nothing personal against Mark Molasky but I was deeply revolted by what I saw on that film. I watched you while you were watching that film and I saw you exhibit the same reactions I feel. You felt the same things that I felt."

The prosecutor did not call the defendant a name, but applied that name to himself. The jury had no way of knowing the defendant's religion, and even so, there is no way the use of the word Nazi could put the appellant in a bad light. The contrary may be true. The use of the term may have elicited sympathy for the defendant. The argument complained of by the appellant could not have had a decisive affect on the jury. *State v. Newlon,* 627 S.W.2d 606, 616–620 (Mo. banc 1982) *cert. denied,* —— U.S. ——, 103 S.Ct. 185, 74 L.Ed.2d 149, reh. den. —— U.S. ——, 103 S.Ct. 391, 74 L.Ed.2d 520; *State v. Murphy, supra* at 732[10, 11]. There was no error much less manifest injustice.

■ Finally, appellant charges the trial court erred in submitting the state's verdict directing instructions because they did not permit the jury to consider a verdict of not guilty, although the defendant had not abandoned this defense. Appellant's final point is denied.

Instructions 5–9 were the verdict directing instructions for each of the five counts, one count of rape, three counts of sodomy and one count of abuse of a child. None of the instructions contained the general converse instruction which would allow the jury to find the appellant not guilty of the crimes charged.[5] Appellant contends that the omission of the general converse instruction was error because he did not abandon his "not guilty" defense at any point in the proceeding.

MAI–CR 2d 2.30 Notes 2 and 2C require that where mental disease or defect excluding responsibility is relied on as a complete defense, the converse instruction must be

---

**5.** However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the

defendant not guilty of that offense. MAI–CR 2d 20.02.2.

omitted. Section 552.030(2) states that a defendant who enters his plea of not guilty by reason of mental disease or defect excluding responsibility or who gives notice that he will rely on that defense shall not be deprived of other defenses.

If the defendant had abandoned all other defenses except mental disease or defect excluding responsibility, the MAI Notes on Use forbid the inclusion of a converse instruction paragraph in the verdict directors. MAI–CR 2.30 Note 2. If other defenses were not abandoned, the converse instruction should have been included.

Appellant did not abandon the defense of "not guilty." Originally appellant pleaded not guilty. The record before this court contains no express statements by appellant that he intended to rely on the insanity defense as a complete defense. Waiver by the accused of the defense of not guilty should not be inferred. See § 546.020 RSMo. 1978.

Therefore, appellant is correct in his contention that it was error not to include the general converse instructions in this case. The prejudicial effect of that error is to be judicially determined. Rule 28.02(e). There was no prejudice.

In each of the verdict directing instructions, the jury was expressly told that it must find the defendant committed all of the elements of the crime before they could find the defendant guilty. Other instructions emphasized the issue of the defendant's guilt or innocence. Instruction No. 12 (MAI–CR 2d 3.70) reads as follows:

"The defendant has denied that he is guilty of the offense charged against him. The defendant has also asserted that even if you find and believe from the evidence beyond a reasonable doubt that he committed the conduct charged against him, he is entitled to a verdict under Counts I thru V of 'not guilty by reason of a mental disease or defect excluding responsibility' because he has such a mental disease or defect at the time of the conduct with which he is charged."

The same issue was called to the jury's attention in Instruction No. 14 (MAI–CR 2d 2.33):

"As to Counts I thru V, if you find and believe from the evidence beyond a reasonable doubt that the defendant committed the conduct charged against him, you will then decide whether or not at that time he had a mental disease or defect excluding responsibility."

Further, appellant's counsel admitted that appellant committed these acts in his opening statement. Appellant's psychiatric experts relied on the authenticity of the tape and appellant's participation in making the tape. In closing argument appellant's counsel said that the tape was never denied, and in emphasizing the mental disease or defect defense said "Would a person in a normal state of mind have done what you saw on that tape? Or have participated verbally and allowed it to happen?"

Appellant admitted to all of the elements of the crimes charged against him. Therefore there was no prejudicial error in omitting the converse instruction paragraph from the verdict directing instructions.

The judgment is affirmed.

DOWD and GAERTNER, JJ., concur.