STATE of Missouri, Respondent,

v.

Betty CLARK, Appellant.

No. 48525.

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 23, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 5, 1985.

Application to Transfer Denied
Aug. 7, 1985.

David E. Woods, Regional Public Defender, Poplar Bluff, for appellant.

John Ashcroft, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Appeal from a conviction of conspiracy to commit capital murder, for which defendant was sentenced to ten years' imprisonment. We affirm.

The sufficiency of the evidence is not challenged. Sherry Patterson, who was angry with her husband, over a period of time gave defendant $8,000 to $10,000 to arrange her husband's murder. Defendant and Virgil Mace, a co-conspirator, [See *State v. Mace*, 682 S.W.2d 163 (Mo.App. 1984)] involved Gerald Smith. Smith made a phone call to Patterson acting like a "hit man" for which he was paid $50.00. Smith agreed to kill Patterson's husband for $10,-000.

Later, after an arrest on another charge, Smith informed the sheriff of the plot in hopes of leniency. The State Highway Patrol was called in, and provided Smith with a concealed microphone and transmitter. Using the device, Smith met with defendant and Mace on August 18. Smith testified in that meeting Mace stated he had a .22 caliber revolver, and defendant said the fee for the murder would come from husband's life insurance proceeds. The transmitter was not working properly and the recording of that conversation was not

good. The tape was admitted, but not played to the jury.

Smith revisited defendant and Mace on August 19 and August 22, equipped with the transmitter both times. These tapes were admitted and played for the jury. On the August 19 tape, Smith can be heard getting the revolver and testing it. The gun misfired several times, and there was a remark Smith would have to put the gun to husband's head. On the August 22 tape, Smith was informed husband would be leaving soon.

On August 27, Mace told Smith to get the revolver. He did so on August 28, and was informed of the best time to kill husband. This meeting was not taped, due to short notice. Smith delivered the gun he was given to the sheriff.

The defense asserted defendant was not serious in any conspiracy to kill Patterson's husband, but rather she was swindling Patterson, taking her money and telling lies to get more. Defendant claimed Patterson seriously wanted her husband dead. However, Patterson testified she was not serious, and she only continued to cooperate with defendant because defendant threatened her children if she did not continue in the plot. Patterson and Smith both testified for the state.

■ Defendant first claims admission of the tapes into evidence was erroneous because of the poor quality of the recordings. Admissibility of such recordings depend upon the circumstances of the individual case. The trial court has reasonable discretion in the matter. *State v. Walker*, 657 S.W.2d 704, 707 (Mo.App.1983). That a recording is partially unintelligible is no ground for rejecting the intelligible portion, unless the unintelligible portions are so substantial as to render the whole untrustworthy. *State v. Hunt*, 651 S.W.2d 587, 591 (Mo.App.1983).

■ The August 19 tape revealed a conversation about the killing, Smith test-firing the weapon, and the comment Smith would have to stick the gun to husband's forehead. The August 22 tape revealed a discussion of $1,000 front money, when husband would arrive, and a detailed description of husband's truck. On the tapes, Smith's voice was loud, clear and distinct; the other voices were intelligible though less distinct. We find no abuse of discretion in admission of the recordings. *Id.*

Defendant asserts the court erred in allowing the state, on the day of the trial, to endorse three additional witnesses on the information, and to amend its answer to defendant's request for disclosure to include those witnesses. She claims these witnesses should have been endorsed immediately after the trial of co-conspirator Mace on January 5, 1984, because the witnesses testified at that trial. Defendant received notice of the motion on January 30, 1984 and her trial began on February 1, 1984. The witnesses were Sherry Patterson, the intended victim's wife, Ralph Mouser, the sheriff who received the gun and its bullets from Smith, and Mike Davis, an investigator for the prosecutor, who obtained the gun and its bullets from the highway patrol.

■ Rule 23.01 specifically authorizes late endorsement of witnesses in the discretion of the trial court. A decision to allow late endorsement will not be reversed without demonstrated prejudice to defendant. *State v. Mayes*, 661 S.W.2d 608, 609 (Mo. App.1983). Failure to disclose is reversible only when it causes a fundamental unfairness. *State v. Sanner*, 655 S.W.2d 868, 878 (Mo.App.1983). No prejudice or fundamental unfairness resulted to defendant here. Defendant knew what the testimony would be, having observed the witnesses at the trial of Mace approximately one month earlier.

Defendant next asserts the court abused its discretion in not granting a mistrial upon failure of the state to reveal a statement given by Catherine Weathers. Weathers was subpoenaed by defendant, who did not notify the prosecutor of his intention to call her. The prosecutor found out about the subpoena from the court file and took a statement from her the day before trial. The statement was not dis-

closed to defendant. This statement, to the effect defendant admitted hiring Smith to kill Patterson's husband, and that Smith believed defendant and Mace were serious when they showed him the gun was not disclosed to defendant. Defendant claims surprise, in that Weathers told defendant's attorney Smith did not think they were serious, and prejudice, in that had the statement been disclosed, defendant would not have called Weathers as her witness.

 Assuming there was a violation of the rules of discovery, *but see State v. Greenlaw*, 593 S.W.2d 641, 643 (Mo.App. 1980), the question of whether a sanction is to be imposed is left to the trial court's discretion. *State v. Mansfield*, 668 S.W.2d 271, 273 (Mo.App.1984). The trial court's decision will be reversed only when it results in fundamental unfairness to defendant. *Sanner, supra.* Defendant knew of this witness, but did not disclose her existence to the prosecutor, who found out only through the court file. He had requested only the names of the defendant's witnesses, and had not filed a motion for discovery. Defendant was granted permission to treat Weathers as a hostile witness, but did not ask to strike any of her testimony. Under the circumstances of this case, we find no fundamental unfairness to defendant in refusing a mistrial, which is a drastic remedy to be granted rarely. *State v. Lee*, 654 S.W.2d 876, 879[4] (Mo. banc 1983).

 Error is also asserted in the court's refusal to allow defendant to ask the veniremen on voir dire "Who among you thinks that all things being equal that a daughter would lie for her mother?" The conduct of voir dire is under the control of the trial court, and committed to its discretion. Interference with the exercise of that control is justified only when the discretion is manifestly abused, with a real probability of injury to a party. *State v. Abbott*, 654 S.W.2d 260, 274[2] (Mo.App.1983). We find no abuse of that discretion here. *See, Abbott*, 654 S.W.2d at 274–75[22].

Defendant complains of the court's action in overruling her motion for a second change of venue under Rule 32.09(c). Venue had previously been changed to Cape Girardeau County from Stoddard County, where the conspiracy arose. Defendant moved to have the trial moved out of the broadcast area of KFVS–TV, Channel 12, of Cape Girardeau, due to news coverage by that station and local newspapers of her co-defendant's earlier trial. She claimed this pre-trial publicity, much of which, including a tape of the television station's coverage of the earlier trial, was admitted into evidence, prejudiced the populace of the county against her.

The court withheld a ruling until it could consider the results of the voir dire. Eleven veniremen of the panel had heard or read of the case, only three of them from the television reports. All indicated they could be fair jurors. Also, all but one were stricken from the jury, and the motion to change venue was overruled.

 Rulings on motions to change venue are consigned to the discretion of the trial court, and will only be reversed if an abuse of that discretion is shown. *State v. Molasky*, 655 S.W.2d 663, 665–66[1] (Mo. App.1983). Even a venireman who has been exposed to pre-trial publicity may be a qualified juror. *Id.* at 667[3]. The trial court is in a much better position to gauge the effect of the publicity upon the trial. *Id.* at 666[2]. Upon examination of the record, we perceive no abuse of discretion.

 Defendant also challenges the refusal of the court to strike venireman Siemers, the only one exposed to the publicity who was not stricken. Siemers, on voir dire, stated he had heard of the case both from television and newspaper reports, but he didn't pay a lot of attention to it. He would have no problem in judging the case on the evidence presented. Again, a venireman who has been exposed to pre-trial publicity is not automatically disqualified; he may be sworn if he will decide only upon the evidence. *Molasky*, 655 S.W.2d at 667[3]. The decision is committed to the discretion of the trial court, which is in a much better position to judge the venire-

man's answer and demeanor. *State v. Miller*, 655 S.W.2d 797, 798–99 (Mo.App.1983). We again find no abuse of discretion.

Defendant asserts the trial court erred in overruling her objection to witness Smith's narrative answer to the question "What did you do after the test-firing of the weapon?" There is no iron-clad rule mandating that testimony be taken in an interrogatory manner. The form of examination is a matter committed to the discretion of the court. *State v. Hardin*, 581 S.W.2d 67, 69[2, 3] (Mo.App.1979). Here, as defendant did not object to the question or move to strike any part of the answer, and the entire answer was admissible, we find no abuse of discretion.

Defendant attacks the admission into evidence of the gun, bullets, and a white washcloth which had been wrapped around the gun, claiming no chain of custody was proven. However, it is not necessary to account for each hand-to-hand transfer. It is sufficient if the proof demonstrates a reasonable assurance the exhibit offered is the same property and is in the same condition when first found. *State v. Starr*, 676 S.W.2d 311, 312–13 (Mo.App. 1984).

The chain of custody in this case started with Gerald Smith, who handed the gun to Sheriff Mouser, who passed it on to Highway Patrol Sergeant Smith, who sent it to the Highway Patrol laboratory and then received it back from that facility. The rest of the chain is not at issue. Sergeant Smith testified the exhibits were in the same condition after he received them from the laboratory as they were before he sent them. This provides the necessary reasonable assurance concerning the condition of the exhibit. *Id.* In addition, as the exhibits were positively identified at trial, no chain of custody was necessary. *State v. Sherrill*, 657 S.W.2d 731, 736 (Mo.App. 1983).

Defendant's final points concern the prosecutor's argument. In his opening statement, the prosecutor stated Patterson would testify she said " 'I could have killed my husband.' And she will testify that from that remark this horrible nightmare came—.'" Defendant's objection, made on the ground this was argument was overruled. The prosecutor's opening statement, the purpose of which is "to inform defendant of the contemplated course of the prosecution," is subject to control of the trial court in his discretion. *State v. Kirksey*, 658 S.W.2d 60, 61 (Mo. App.1983). We find no abuse of discretion.

Defendant also attacks the prosecution's rebuttal argument, where he argued he had done his duty to present the case in a way it could be understood. Defendant claimed at trial this argument was beyond the scope of rebuttal, and enlarges her objection here to include the ground it is an attempt to procure a conviction by arguing a prosecutorial opinion based on extra-record information, as condemned in *State v. Bramlett*, 647 S.W.2d 820, 822 (Mo.App. 1983). Plain error review of the latter is requested. Rule 30.20.

When the argument is considered in context, *State v. Mason*, 657 S.W.2d 40, 44[7] (Mo.App.1983) defendant's characterization of the argument is shown to be incorrect. It was a plea for the jury to do its duty, and a plea for strong law enforcement, both proper arguments. *State v. Olds*, 603 S.W.2d 501, 510–11 (Mo. banc 1980); *State v. Hubbard*, 659 S.W.2d 551, 558–59 (Mo.App.1983); *cf. Bramlett, supra*. Control of final argument is in the discretion of the trial court, and we perceive no abuse. *Hubbard*, 659 S.W.2d at 558. Also, the subject of the jury's duty had been broached in the prosecutor's opening phase of final argument, and was therefore properly open for comment on rebuttal. *See State v. Malveaux*, 604 S.W.2d 728, 736[12, 14] (Mo.App.1980).

Judgment affirmed.

DOWD, P.J., and CRANDALL, J., concur.