STATE of Missouri, Respondent,

v.

Carman DECK, Appellant.

No. SC 85443.

Supreme Court of Missouri,
En Banc.

May 25, 2004.

Rehearing Denied July 1, 2004.

Rosemary E. Percival, Office of the Public Defender, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

RONNIE L. WHITE, Chief Justice.

## I.

A jury convicted Appellant, Carman Deck, of two counts of first-degree murder and recommended a sentence of death for each count.[1] Judgment was entered consistent with the recommendation. Appellant moved for postconviction relief after his convictions and sentences were affirmed on direct appeal.[2] This Court remanded for a new penalty phase, finding that trial counsel's failure to offer proper mitigation instructions during that phase of the trial constituted ineffective assistance of counsel.[3] On retrial, the jury recommended two death sentences, and judgment was entered consistent with that recommendation. Appellant now asserts nine points of error with his resentencing. This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 3. Affirmed.

## II.

In his first point, Appellant contends that the trial court abused its discretion by allowing the admission of a double hearsay statement made to Deputy Sheriff Donna Thomas. Tonia Cummings made the original statement to Charles Hill, who in turn relayed it to Deputy Thomas. The statement was a warning that a robbery and possible murder were going to occur in rural DeSoto, Missouri, involving an elderly gentleman.

---

1. Appellant was also convicted of two counts of armed criminal action, one count of first-degree robbery, and one count of first-degree burglary for which he received, respectively, concurrent life sentences, consecutive thirty-year sentences, and a fifteen-year sentence.

2. *State v. Deck,* 994 S.W.2d 527 (Mo. banc 1999).

3. *Deck v. State,* 68 S.W.3d 418 (Mo. banc 2002).

 "A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value."[4] Charles Hill's statement was offered to explain why the police began a search for the Appellant and a house-to-house search that ultimately led to discovery of the crime scene. Statements made by out-of-court declarants that explain subsequent police conduct are admissible to supply relevant background information and continuity.[5] The trial court did not abuse its discretion when allowing the admission of this out-of-court statement.

### III.

 Next Appellant asserts that the trial court abused its discretion by overruling his motion to appear at trial free of restraints. Appellant believes having to appear before the jury wearing leg irons and handcuffed to a belly chain violated his rights to due process, equal protection, confrontation of the evidence, a fair and reliable sentencing and freedom from cruel and unusual punishment.

 The trial court has discretion to impose security measures necessary to maintain order and security in the courtroom, including the use of restraints.[6] "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."[7] "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion."[8] Recognizing this discretion, however, this Court does not minimize in any way its concern for maintaining a jury that is not prejudiced by extra-judicial influences and passions. Challenging the trial court's discretion to impose security by use of restraints is an individual and fact-specific inquiry.

Trial counsel made no record of the extent of the jury's awareness of the restraints throughout the penalty phase, and Appellant does not claim that the restraints impeded him from participating in the proceedings. There is also evidence that there was a risk that Appellant might flee in that he was a repeat offender and evidence from the guilt phase of his trial indicated that he killed his two victims to avoid being returned to custody. While this does not represent a comprehensive list of factors this Court would analyze in making determinations on this issue, there is sufficient evidence in the record to support the trial court's exercise of its discretion to deny Appellant's motion.

 Even assuming, arguendo, that the trial court did abuse its discretion in this instance, Appellant has not demonstrated that the outcome of his trial was prejudiced. Appellant offers nothing more than speculation in support of his argument. Neither being viewed in shackles by the venire panel prior to trial, nor being viewed while restrained throughout the entire trial, alone, is proof of prejudice.[9]

4. *Smulls v. State*, 71 S.W.3d 138, 148 (Mo. banc 2002).

5. *State v. Dunn*, 817 S.W.2d 241, 243 (Mo. banc 1991).

6. *State v. Armentrout*, 8 S.W.3d 99, 108 (Mo. banc 1999).

7. *In re Care and Treatment of Spencer*, 123 S.W.3d 166, 168 (Mo. banc 2003).

8. *Id.*

9. *State v. Hall*. 982 S.W.2d 675, 685 (Mo. banc 1998); *State v. Brooks*, 960 S.W.2d 479 (Mo. banc 1997); *State v. Clements*, 849 S.W.2d 640, 647 (Mo.App.1993).

Moreover, the venire panel was questioned in voir dire, and all members responded that Appellant's appearance in shackles would not affect their decision.

## IV.

■ In Appellant's third point, he argues that the trial court plainly erred when submitting penalty phase instructions numbers 7, 8, 12, and 13. He contends that these instructions did not inform the jury that the State bore the burden of proving aggravating circumstances beyond a reasonable doubt and that mitigating circumstances were insufficient to outweigh the evidence of aggravating circumstances. Appellant believes the wording of the instructions could have allowed the jury to infer that the burden of proof was lower than beyond a reasonable doubt. Having not raised this issue at trial, review is under the plain error standard.[10]

These instructions are derived from section 565.030.4 and were appropriately patterned after MAI–CR 3d 313.41, and 313.44.[11] This Court recently addressed this claim and found no error with these patterned instructions.[12] The MAI instructions are constitutional, and there was no plain error in law with their delivery to the jury.[13] Having examined this claim thoroughly and finding no error of law, an extended opinion on these issues would have no precedential value.[14]

## V.

■ Appellant's fourth point raises the issue of whether the trial court erred by failing to read to the jury MAI–CR 3d 300.04.2—the short version of the jury recess instruction.[15] Appellant claims that the jury's verdict was affected because the court failed to provide the short version of the instruction when: (1) the court divided the jury panel into small groups for death qualification, (2) the small groups returned to the larger group, (3) the proceedings ended on the first and second days of trial, and (4) the parties rested their cases. Defense counsel failed to timely object to this alleged error, so this Court reviews for plain error.[16]

■ To establish that the instructional error rose to the level of plain error, appellant must demonstrate that the trial court so misdirected or failed to instruct the jury that it is evident the instructional error affected the jury's verdict.[17] The jury recess instruction directs the jury not to discuss the case with anyone, including the other jury members, or express or form an opinion of the case until it is submitted for the jury's decision.[18]

The Notes on Use for MAI–CR 3d 300.04 state that the long version, 300.04.1, entitled, "At the First Recess and Adjournment," shall be read at the conclusion of voir dire and if recess occurs during voir

10. Rule 30.20.

11. All statutory citations refer to RSMo 2000 unless otherwise noted.

12. *State v. Taylor,* 134 S.W.3d 21, 30 (Mo. banc 2004).

13. *Lyons v. State,* 39 S.W.3d 32, 43 (Mo. banc 2001).

14. Rule 30.25.

15. Appellant also brought a claim of instructional error with regard to MAI–CR 3d

302.02, but expressly abandoned that claim per letter to this Court dated March 2, 2004.

16. Rules 28.03 and 30.20. See also *State v. Wurtzberger,* 40 S.W.3d 893, 897–98 (Mo. banc 2001).

17. *State v. Baker,* 103 S.W.3d 711, 723 (Mo. banc 2003).

18. MAI–CR 3d 300.04.2.

dire than it shall also be read at that time. The short version of this MAI, 300.04.2, is entitled, "At Subsequent Recesses or Adjournments," and the Notes of Use state that it may be given in any other form so long as it complies with section 546.230.

The record reveals that, while Appellant's claimed omissions did occur, the panel was given the full instruction prior to the noon recess during voir dire, again prior to individual voir dire in the afternoon and again when voir dire was completed. During the death qualification phase, the jurors were not in recess while the smaller groups were interviewed to trigger the need to read the instruction. The instruction was again delivered prior to a recess for dinner, and after dinner the jury was assembled and instructed to return home and pack to prepare for hotel sequestration. On the second day of trial, the instruction was given at every recess, but not at the day's adjournment. On the third day of trial, the instruction was given at every recess except for the one occurring after both parties had rested and before the instruction conference began.

The jury heard the instruction multiple times throughout the course of Appellant's trial, and Appellant offers no evidence that any juror violated the instruction by engaging in discussion about the case or by forming an opinion prior to the completion of the case. The trial court did not so misdirect or fail to instruct the jury that it is evident the instructional error affected the jury's verdict. Appellant's claim fails to establish plain error for the limited omissions in repeating the recess instruction.

## VI.

■ Appellant next argues the trial court abused its discretion with the admission of victim-impact evidence. Specifically, he asserts that an extensive family tree from the victim's family, a narrative statement by the victim's son, and an alleged hearsay statement that the victim's granddaughter was worried and afraid to come to court were excessive and prejudicial.

■ "[T]he trial court is vested with broad discretion in determining the admissibility of evidence offered at the penalty stage of a capital case." [19] Victim impact evidence is admissible under the United States and Missouri Constitutions, and the State is permitted to show that a victim is not a faceless stranger and that his or her death represents a unique loss to society and to the family.[20] "[V]ictim impact evidence violates the constitution only if it is so unduly prejudicial that it renders the trial fundamentally unfair." [21]

The chart depicting the victim's family tree, with 46 named family members, was found by the trial court to be less prejudicial than having each of these individuals testify. The chart did contain the names of several family members who had not yet been born at the time of the murders and spouses that were no longer part of the family. This information was provided to the jury; however, the jury was free to decide what impact, if any, the victims' deaths had on those absent family members.

■ The narrative statement, read by the victims' son, was intended to help prevent him from breaking down emotion-

**19.** *State v. Johns*, 34 S.W.3d 93, 112 (Mo. banc 2000).

**20.** *Deck*, 994 S.W.2d at 538–39; *Payne v. Tennessee*, 501 U.S. 808, 822–25, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

**21.** *Id.*

ally or from making impermissible statements. It was the same statement that was read at Appellant's first trial, and being narrative as opposed to interrogative does not constitute a per se abuse of discretion.[22] As Appellant points out, this statement did include the remark, "How senseless this was to take the nucleus of our family away." However, this remark is not inconsistent with other remarks contained within the narrative, and Appellant provides nothing more than speculation in his attempt to claim that this narrative, or the individual statement, was in any way prejudicial.

Finally, with regard to the victims' daughter's testimony referencing the eleven-year-old granddaughter's fear of coming to court, this would only be a natural response for any child having to attend a courtroom proceeding. Appellant again fails to substantiate his clam that this statement would somehow allow jurors to speculate that her fear was related solely to Appellant's presence in the courtroom.

In short, all of Appellant's assertions regarding the victim impact evidence are unsubstantiated and based totally in speculation. Defendant's bare assertions of prejudice are not sufficient to establish fundamental unfairness nor do they demonstrate how the outcome of the case was substantively altered.

## VII.

In his sixth point, Appellant argues that the trial court abused its discretion by allowing the State, over objection, to personalize its closing argument. Appellant claims that the prosecutor urged the jurors to "relive" the final ten minutes of the victims' lives when they begged for mercy while the Appellant contemplated if he would murder them. Appellant believes that allowing this alleged improper argument deprived him of rights to due process, a fair trial and impartial jury, and freedom from cruel and unusual punishment.

"The trial court has broad discretion in controlling the scope of closing argument and the court's rulings will be cause for reversal only upon a showing of abuse of discretion resulting in prejudice to the defendant."[23] "Improper personalization in closing argument occurs when the argument suggests a personal danger to the jurors or their families."[24] Arguing for jurors to supplant themselves in the position of a party or a victim is also improper personalization that can only arouse fear in the jury.[25]

In Appellant's closing argument, defense counsel stated that this was not a planned murder and that Appellant was scared and nervous. Counsel also states, "... and he made a lousy, lousy decision. He never should've shot. He never should be been [sic] in there in the first place. He never should've, but it's a split second and on the tape it says he went there to rob."

In response to this argument that the murder was not planned, the prosecutor in

**22.** *State v. Clark,* 693 S.W.2d 137, 142 (Mo. App.1985). The form of witness examination at trial, whether in a narrative or interrogatory manner, is also a matter committed to discretion of the trial court. *Id.* On direct appeal from Appellant's first convictions and sentences, this Court rejected Appellant's argument that the narrative statement produced emotional outbursts so prejudicing his trial that a mistrial was warranted. *Deck,* 994 S.W.2d at 538–39.

**23.** *Deck,* 994 S.W.2d at 543.

**24.** *State v. Bristol,* 98 S.W.3d 107, 115 (Mo. App.2003).

**25.** *State v. Williams,* 97 S.W.3d 462, 474 (Mo. banc 2003).

his closing argument states, "Think about the evidence. Think about [Appellant] with the gun in his hand, James and Zelma Long lying on the bed. Ten minutes doesn't seem that long. See how long that is just when you're sitting in the jury room. Think about them on their stomachs begging for their lives for ten minutes."

The evidence of the ten minutes elapsing between the time the victims were ordered to lay on the bed in the positions described and the time of their being shot was properly in the record, and it was not improper to reference these facts in closing argument. The specific reference to these facts in the prosecutor's statements above addressed the credibility of Appellant's claim that the murders were committed without more than a split second's worth of thought. The trial court did not abuse its discretion when overruling Appellant's objection, and there is no evidence, beyond speculation, that the decision to allow the prosecutor's argument to proceed resulted in prejudice to the defendant.

## VIII.

Appellant next asserts that the trial court abused its discretion when overruling his objection to striking venirepersons Richard Overmann and Michael Schaeffer for cause. However, "[v]enirepersons may be excluded from the jury when their views would prevent or substantially impair the performance of their duties as jurors in accordance with the court's instructions and their oaths".[26] "A challenge for cause will be sustained if it appears that the venireperson cannot consider the entire range of punishment, apply the proper burden of proof, or otherwise follow the court's instructions in a first degree murder case."[27]

The transcripts show that both prospective jurors indicated that they had a problem with considering the death penalty and that they believed punishment should be limited to life imprisonment without parole. There was serious equivocation expressed by Mr. Overmann and Mr. Schaeffer about their ability to follow the instructions of the court and their ability to consider and recommend the full range of punishment for Appellant. "A juror's equivocation about his ability to follow the law in a capital case together with an equivocal statement that he could not sign a verdict of death can provide a basis for the trial court to exclude the venireperson from the jury."[28] The trial court did not abuse its discretion when sustaining the prosecutor's motion to strike.

## IX.

Appellant raises, as his eighth point, this Court's independent proportionality review and advocates for reducing his sentence to life imprisonment without parole. Under section 565.035.3, this Court is required to determine whether:

(1) The sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) The evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) The sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant.

Having thoroughly reviewed the record, this Court concludes that there is no evi-

26. *State v. Smith*, 32 S.W.3d 532, 544 (Mo. banc 2000).

27. *Id.*

28. *Id.*

dence to suggest that the punishment imposed was a product of passion, prejudice, or any other arbitrary factor.

The trial court's findings are next reviewed to determine if the evidence supports, beyond a reasonable doubt, the existence of an aggravating circumstance and any other circumstance found. In Appellant's first trial, the jury unanimously found six statutory aggravating circumstances as a basis for considering the two death sentences.[29] The same evidence was heard in Appellant's retrial of the penalty phase, and it amply supports the statutory aggravators found by the jury when delivering its recommendation for the death sentence.

Finally, this Court has upheld sentences of death in similar cases where the defendant murdered multiple victims, acted for pecuniary gain, or where the defendant sought to eliminate possible witnesses to avoid a lawful arrest.[30] The death sentences in this case are neither excessive nor disproportionate to the penalty imposed in similar cases, considering the crime, the strength of the evidence, and the defendant.

## X.

■ Appellant finally argues that the trial court lacked jurisdiction and authority to sentence Appellant because the state failed to charge him with "aggravated first-degree murder." Appellant contends that failure to plead facts, as listed in section 565.030.4, creates a charge of murder whereby the maximum penalty was life in prison.

This Court has addressed this claim numerous times before. The omission of statutory aggravators from an indictment charging the defendant with first-degree murder does not deprive the sentencing court of jurisdiction to impose the death penalty.[31] Missouri's statutory scheme recognizes a single offense of murder with maximum sentence of death, and the requirement that aggravating facts or circumstances be present to warrant imposition of death penalty does not have the effect of increasing the maximum penalty for the offense.[32] Having examined this claim thoroughly and finding no error of law, an extended opinion on these issues would have no precedential value.[33]

## XI.

The judgment is affirmed.

All concur.

---

**29.** The jury found: 1) that each murder was committed while the defendant was engaged in the commission of another unlawful homicide, section 565.032.2(2); 2) that the murders were committed for the purpose of receiving money or any other thing of monetary value, section 565.032.2(4); 3) that the murders were outrageously and wantonly vile, horrible, and inhuman in that they involved depravity of mind, section 565.032.2(7); 4) that the murders were committed for the purpose of avoiding a lawful arrest, section 565.032.2(10); 5) that the murders were committed while defendant was engaged in the perpetration of burglary, section 565.032.2(11); and 6) that the murders were committed while defendant was engaged in the perpetration of robbery, section 565.032.2(11). *Deck,* 994 S.W.2d at 545.

**30.** *State v. Ringo,* 30 S.W.3d 811(Mo. banc 2000); *State v. Worthington,* 8 S.W.3d 83, 93 (Mo. banc 1999); *State v. Middleton,* 998 S.W.2d 520 (Mo. banc 1999).

**31.** *State v. Cole,* 71 S.W.3d 163, 171 (Mo. banc 2002).

**32.** *Id.* See also *State v. Tisius,* 92 S.W.3d 751, 766 (Mo. banc 2002).

**33.** Rule 30.25.